C. C. JAMES ROOFING CO. *v.* REGENT THEATER CO.

RELEASE—ASSIGNMENT OF CLAIM BARS RIGHT OF ACTION.

> An action by a contractor against a theater company for damages for the breach of a construction contract is barred by an assignment by the contractor to the president of the theater company of all claims of every kind which it might have against the theater company.[1]

Error to Kent; Perkins (Willis B.), J. Submitted June 8, 1926. (Docket No. 23.) Decided December 8, 1926.

---

[1]Building and Construction Contracts, 9 C. J. § 232 (Anno).

Case by the C. C. James Roofing Company against the Regent Theater Company for breach of a construction contract.   Judgment for defendant on a directed verdict.   Plaintiff brings error.   Affirmed.

*Wicks, Fuller & Starr,* for appellant.

*Knappen, Uhl & Bryant,* for appellee.

CLARK, J.   The trial judge directed a verdict for defendant on which judgment was entered.   Plaintiff brings error.   In the spring of 1920 defendant began erecting a theater building in Grand Rapids. The support of the project was local, and to some extent, at least, prompted by civic pride.   A part of the plan of financing was to have contractors accept shares of capital stock for a part, at least, of their compensation for labor and materials to be furnished. On March 2, 1920, plaintiff got the contract to furnish sheet metal roofing.   The contract fixed the price and time and manner of payment, a part of which we quote:

"Ten per cent. to be paid in Regent Theater stock at $12.50 per share as estimates are rendered."

Anticipating the contract, plaintiff, on February 28, 1920, subscribed for and agreed to purchase shares in the defendant company as follows:

"As many shares of the capital stock of the Regent Theater Company of Grand Rapids at $12.50 per share as my net profits of ten per cent. amounts to on my contract for roofing the Regent Theater Company."

Corporate records showed plaintiff as stockholder accordingly.   Plaintiff also purchased defendant's bonds to the amount of $200.   Plaintiff acquired some material toward performing its contract.   But later in 1920 defendant was in financial straits.   It was then unable to erect the building and it breached its contract with plaintiff.   Its stock was worthless.

Plaintiff was directed to salvage the material acquired, which it did, of which defendant's letter of January 5, 1921, said, "leaving a balance of $156.38, which amount is to be paid to you." On February 5, 1921, plaintiff received and accepted a check from defendant for such balance. Across the face of the check were written the words, "In full settlement of contract," and on the beck, "In full of all claims on contract." At the trial the exhibited, paid check showed an ink line crossing all of the quoted words. Responsibility for the ink line was a disputed question of fact. Persons interested in the defendant company attempted to procure funds for it that it might build a theater. New plans were prepared for a building different in form and structure from that first contemplated. Finally an arrangement for financing made it necessary for defendant to have surrendered all its outstanding bonds, and to discharge all claims against it. Form letters outlining the arrangement were sent to bondholders and claimants. Plaintiff received a letter, which is quoted in part:

"May 27, 1922.
"TO THE BONDHOLDERS OF THE REGENT THEATER:

"According to our records you own $200 bonds of the Regent Theater Company. As you know, interest on these bonds was defaulted April first. There are no funds available to meet this interest and the bondholders have a legal right to start foreclosure proceedings under the mortgage.

"Before taking this action, an analysis of the situation may be of interest:

"The bonds outstanding amount of $165,000, and if the mortgage is foreclosed, taking eighteen months for possession, the accumulated interest will bring the amount due to approximately $188,000.

"Mechanics' liens and damage suits will raise this figure to $225,000 or $250,000 and tie up the proceeds of a sale under the mortgage for a number of years, because the receivers will naturally contest all liens

carrying damages.   The above illustrates the condition we are to face in case of foreclosure.

"The writer has given his undivided time for more than a year (without compensation) to finance this proposition, but conditions have heretofore made it impossible.   I have, however, finally arranged with men of unquestioned financial responsibility, a means of completing the building.   In order to meet their demands, it is necessary for me to buy all outstanding bonds at eighty cents cash, payable on or before July fifteenth.   I must also buy and discharge all liens and lawsuits and provide funds for furnishing the theater, and believe it can all be accomplished.
\* \* \*

> "Yours very truly,
> "REGENT THEATER COMPANY,
> "By WM. M. WURZBURG,
> "President."

Soon thereafter plaintiff signed and delivered the following:

"WILLIAM M. WURZBURG,
"224 Monroe Avenue,
"Grand Rapids, Michigan.

"*Dear Sir:*   I, the undersigned, being a creditor of the Regent Theater Company in the sum of $200 by reason of holding bonds of said Regent Theater Company, agree to sell and transfer to you all claim of every kind which I may have or claim to have against the company for the sum of $160 at any time on or before July 15, 1922.   For value received.

> "Yours very truly,
> "C. C. JAMES ROOFING CO.,
> "By C. C. JAMES."

Plaintiff was paid the $160.   Defendant, being financed, erected its theater.   Plaintiff brought this suit in March, 1923, claiming damages for breach of the contract of March, 1920.

The assignment, quoted, executed by plaintiff to Mr. Wurzburg, left plaintiff destitute of claim against defendant.   The evidence neither destroys nor tends to destroy that assignment.   So, verdict was properly

directed. That the contract was breached in 1920, that plaintiff's profits on the contract were in any event to be paid in stock, that the stock was of no value, and that, therefore, verdict was directed rightly, is a question we need not discuss.

Nor need we consider the claim that there was no evidence of damages as of the time of the breach to submit to the jury. We find no reversible error.

Judgment affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, and WIEST, JJ., concurred. MCDONALD, J., did not sit.